Huggins *et al. vs.* Huggins *et al.*

[This case was argued at the last term, and the decision reserved.]

1. One item of a will was as follows: The residue of testator's estate should "be distributed equally among my following grandchildren, to-wit: The children of my deceased daughter, Isabella Frances McClendon, Mary, Joseph, Lula, Sabra and Bettie; the child of my deceased son, John Huggins, Caledonia; the children of my deceased son, James Lewis Huggins, Wellborn, Joseph and Susan," etc., naming grandchildren as children of others of the testator's children dead and living. It then provided that this item should embrace al notes, accounts, cash and other property on hand at the time of his death, "to be equally divided among my grandchildren above mentioned, except that $800.00 is to be deducted from the amount I have willed to the children of my deceased son, Hastings Young Huggins, the amount of $800 00 having been advanced by me to my son, Hastings Young Huggins, during his

lifetime." In another item he gave $10 00 to grandchildren, nam-
ing them, children of a named son and daughter in Texas :

*Held,* that the residuary legatees took *per capita* and not *per stirpes.*
2. To such a will the following codicil was made : "I further desire
and direct that my son, Aaron Edwin Huggins, who is now absent,
and it is not known by me whether he is alive, that, in the event
he should return, he shall receive an equal share with my above
named heirs, viz. : William Bluford and Asa Mitchell Huggins."
In the will nothing was left to the two sons named, but their chil-
dren were among the residuary legatees :

*Held,* that this codicil did not operate to change or affect the will, so
as to make the residuary legatees take *per stirpes,* but only provided
for the absent son, should he return alive.

February 19, 1884.

Wills.   Estates.   Before Judge HARRIS.   Carroll Supe-
rior court.   April Term, 1883.

William B. Huggins, executor of Asa Huggins, deceased,
filed his bill in 1880 for a construction of the will of his
testator, the material parts of which are set out in the
decision.   He alleged that he had eleven children, and
Asa M. Huggins, another son of the testator, had only one;
but the latter insisted that the children took *per stirpes*
and not *per capita,* and that his one child was entitled to
as much as the eleven of complainant.   There was some
parol evidence to the effect that the testator stated that he
was not satisfied with his will; that he desired his son,
Edwin, if he should return, to have an equal share in his
estate with William B. and Asa M.; that he thereupon
obtained one Simons to write a codicil, and the latter wrote
it in the language of the testator.   Edwin was last head
from in Nebraska, 1866, and subsequently a man with
whom he lived wrote that he had started for home.   He
has not since been heard from.

The court held that the grandchildren of the testator
took *per capita,* and decreed accordingly.   Defendants
moved for a new trial, which was refused, and they ex-
cepted.

W. A. TURNER, for plaintiffs in error.

MERRELS & BURCH; ORLANDO McLENDON, BREWSTER & BUCHANAN; JOHN S. BIGBY, for defendants.

JACKSON, Chief Justice.

Only one question is made before us by the counsel for the plaintiffs in error, and that is, whether the grandchildren named in the will take *per capita* or *per stirpes?*

By the fifth item of his will, the testator desired the residue of his estate should

"be distributed equally among my following grandchildren, to-wit: the children of my deceased daughter, Isabella Frances McClendon, Mary, Joseph, Lula, Sabra and Bettie; the child of my deceased son, John Huggins, Caledonia; the children of my deceased son, James Lewis Huggins, Wellborn, Joseph and Susan,"

and so on, naming the grandchildren as children of others of his children, dead and living, and then he adds

"This item is to embrace all notes and accounts due me; all cash on hand at the time of my death, and all other property of which I may be possessed at the time of my death, to be equally divided among my grandchildren above mentioned, except that eight hundred dollars is to be deducted from the amount I have willed to the children of my deceased son, Hastings Young Huggins, the amount of eight hundred dollars having been advanced by me to my son, Hastings Young Huggins, during his lifetime."

By the 6th item, he gives ten dollars to grandchildren, naming them, children of his son, Jephtha, all in Texas and by the seventh, ten dollars to the children, naming them, of a daughter, Elizabeth Swinny, also all in Texas, mentioning also, in this last item, a child of hers, whose name he does not know.

1. There can be no doubt that these grandchildren, named in the fifth item of the will, were designated and intended by the testator to take, as residuary legatees, equally, all the estate left in that item, *per capita.* After expressing a wish that the property mentioned in the item be equally divided among them before naming them, he adds that it

is to embrace notes, accounts, all cash on hand at his death, and all the property he may be then possessed of, and all this property is " to be divided equally among my grandchildren above mentioned," thus clinching the nail and fastening his intention that it shall be divided *per capita* among them.

Then follows the exception of the children of one son, who are to receive eight hundred dollars less than the others, because their deceased father had been advanced that sum. Hence it is presumed he directed that his grandchildren be named as the children of each son or daughter, because he wished that advancement to be accounted for by the children of this deceased son. From no mention being made of any advancement to others, the inference is that none of the other deceased parents had had advancements; and that these alone, as heirs of a deceased parent, had received *per capita* an equal portion of that advancement; and therefore, as he wished all the grandchildren named to take an equal *per capita* share of what was received from his property, it became necessary to charge these with the advancement to their father, in their hands as his heirs when the will was made. Further light is thrown on this construction of the clause by the 6th and 7th items, in which he gives ten dollars to certain grandchildren in Texas, naming them also as the children of a son and daughter there. Evidently he thought it necessary to name all his children and grandchildren, upon the idea that not to name them would vitiate his will. Moreover, these items show that the grandchildren in Georgia, those whom he knew and loved, were the objects of his bounty, and those whom he did not know, who were probably born in Texas, were not; and thus that bounty passed over the son and daughter in Texas just as it did the sons and daughters in Georgia, and lighted on the heads only of the grandchildren whom he knew, leaving out the Texas grandchildren whom he did not know.

For these reasons, it seems to us clear that this will gives

to each grandchild an equal share of this *residuum, per capita,* and without regard to whose children they were.

2. But there is a supplement or codicil to this will, and the counsel for plaintiffs in error, while conceding that, if the will stood alone, this construction put upon it is right, insists that this codicil shows that such was not the intention of the testator. The codicil is as follows:

"I further desire and direct that my son, Aaron Edwin Huggins, who is now absent, and it is not known by me whether he is alive, that, in the event he should return, he shall receive an equal share with my above named heirs, viz.: William Bluford and Asa Mitchell Huggins."

In the will, nothing is left to either of these two sons, who are his only living sons in Georgia; but William Bluford's eleven children and Asa Mitchell's one child are residuary legatees, with other named grandchildren, *per capita,* as stated above by the will. Inasmuch as neither of them get a cent by the will, we should conclude that the testator merely named him, the absent son, to show he remembered him, under the idea that this was necessary, as mentioned above in respect to those absent in Texas, and intended him to get nothing; but the parol testimony leads us to think that he may have intended him, if he ever returned, to take as much as each of his two sons named would have taken as heirs, had there been no will. In the codicil, he names them as heirs, and the codicil may have meant to give him as much as he would have got as an heir at law. But be that as it may, it seems clear that the codicil was not intended to operate so as to change or affect at all the will, but only to provide for this son, should he return alive. Counsel insists that it shows the intention to be to make grandchildren take *per stirpes,* inasmuch as reference is made to two sons, one's children numbering eleven, and the other's but one child, and the testator alluding to the shares as equal, inasmuch as he wished the absent son to have what either got. But neither got a dime as a legatee, while either would have

got an equal share as heir; and he calls them heirs. The whole intent of the codicil was not to alter the will at all, except in so far as to provide for this absent son.

So that in any view we can take of the will, the grandchildren named take *per capita*, and the judgment is affirmed.

Judgment affirmed.